FILED

# IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

03 MAR 31  PM 3: 03

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| THERESA CHARNEY, | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | } **CASE NO.  CV 00-B-3382-S** |
| | } |
| LONG LEWIS FORD- LINCOLN | } |
| MERCURY OF CULLMAN, INC., | } |
| and ECKENRODFORD LINCOLN | } |
| MERCURY OF CULLMAN, INC., | } **ENTERED** |
| | } |
| **Defendants.** | } **MAR 3 1 2003** |

## MEMORANDUM OPINION[1]

Currently before the court is a Motion for Summary Judgment filed by Defendant Long

Lewis Ford-Lincoln Mercury of Cullman, Inc. ("Long Lewis")[2], Eckenrod Ford Lincoln Mercury

---

[1] At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant.  The court requested that counsel for defendant Long Lewis prepare a proposed memorandum opinion for the court and required that counsel send a copy of the proposed opinion to counsel for plaintiff.  The court has made only minor changes to the opinion prepared by defendant's counsel.  The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997).  This is an important opinion.  Before requesting a proposed opinion from defendant's counsel, the court had reached a firm decision as to the appropriate outcome, and counsel drafted the opinion according to the express instructions of the court as to its contents. Although the court has chosen to adopt, in large part, the opinion prepared by defendant's counsel, the court personally reviewed this opinion and the opinion reflects the court's own conclusions.

[2] In 1998, Michael and Lisa Eckenrod purchased the stock of Long Lewis Ford of Cullman, Inc. and at that time the dealership became Eckenrod Ford.  (Deposition of Michael Eckenrod, p. 6-7, 29; Exhibit 7 to Defendants' Evidentiary Submission).  This fact is not in dispute.  For that reason, Eckenrod Ford and Long Lewis shall be collectively referred to in this memorandum as ("Eckenrod Ford") and any ruling applicable to Eckenrod Ford shall also be applicable to Long Lewis Ford.

49

of Cullman, Inc., ("Eckenrod Ford"), Vaughn Burrell, Michael E. Eckenrod, and Lisa Eckenrod.[3]
Also before the court is Defendants' Motion to Strike Affidavits Submitted in Opposition to
Motion for Summary Judgment.

Plaintiff Theresa Charney ("plaintiff" or "Charney") asserts claims of sexual
discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e, *et. seq.*, and 42 U.S.C. §1981, and also claims that defendant
violated the Equal Pay Act, 29 U.S.C. § 206(d).   Upon consideration of the record, the
submissions of the parties, the argument of counsel, and the relevant law, the court is of the
opinion that defendants' Motion for Summary Judgment is due to be granted.  Defendants'
Motion to Strike Affidavits Submitted in Opposition to Motion for Summary Judgment is due to
be granted in part and denied in part.

## I. FACTUAL SUMMARY

### A.    Plaintiff's Employment

In January 1998,  Theresa Charney was hired by Eckenrod Ford (then Long Lewis Ford)
as a Retail Sales Consultant. (Charney Dep. at 15, 20, attached as Exh. 6 to Defendants'

---

[3]  In addition to naming Long Lewis and Eckenrod Ford as defendants, plaintiff, in her
original complaint, named Vaughn Burrell, Michael E. Eckenrod and Lisa Eckenrod as
individual defendants. (*See* Compl.) On March 2, 2001, plaintiff filed an amended complaint,
wherein she did not name as defendants these individuals. (*See* Amended Compl.)  Because
there are no claims asserted against the individual defendants in the amended complaint, they are
no longer parties to this action.   In any event, Title VII provides that individuals, as employees
or agents, may not be sued in their individual capacity. *Busby v. City of Orlando*, 931 F.2d. 764,
772 (11th Cir. 1991) (citing *Clanton v. Orleans Parish School Bd.*, 649 F.2d 1084, 1099 & n.9
(5th Cir. 1981). Furthermore, there are no state law claims set forth in either of the plaintiff's two
complaints, and plaintiff does not assert any opposition to the Motion for Summary Judgment
filed by these three individual defendants.  To the extent any claims remain pending against
these individual defendants, those claims are due to be dismissed with prejudice.

Evidentiary Submission.)  In or around April 1998, after working in retail sales for approximately three months, plaintiff was transferred to a sales position in the Commercial Sales Division.  (*Id.* at 17, 20.)  Charney remained in the Commercial Sales Division for six to seven months before she was transferred back to retail sales.  (Michael Eckenrod Dep. at 118, attached as Exh. 7 to Defendants' Evidentiary Submission.)  Charney was terminated on September 9, 1999.  (Charney Dep. at 111.)  Plaintiff alleges that during her employment she was subject to gender-based discrimination and harassment.  She filed this action alleging violations of Title VII and the Equal Pay Act.

**B.    Plaintiff's Allegations of Discrimination and Harassment During Her Employment**

      **1.    Plaintiff's Testimony**

Shortly after plaintiff transferred into the Commercial Sales Division of Eckenrod,  Allen Hassell became the manager of that division.  (Charney Dep. at 24.)   Charney alleges that Hassell had a demeaning attitude and that he always wanted to massage the women's shoulders.  (*Id.* at 27.)  Plaintiff contends that Hassell put his hands on her shoulders on one occasion. (*Id.* at 27.)  When plaintiff objected to this behavior, Hassell never touched her again.  (*Id.* at 27-28.)  Plaintiff further contends that Hassell made inappropriate remarks such as calling her "hon" in front of her clients.  (*Id.* at 28.)  After she complained, Hassell then called her by her name "most of the time."  (*Id.* at 29.)

Plaintiff testified that friends of Hassell who visited the commercial sales office would "come out [of the bathroom] with their parts hanging out."  (*Id.* at 57.)[4]  However, Charney had

---

    [4]It is unclear from plaintiff's deposition whether this conduct occurred only one time or more often.

no evidence to establish that such conduct was directed by Hassell or even known by him. (*Id.* at 57-59.) Plaintiff testified that she did not complain to Mike Eckenrod concerning this alleged incident or incidents. (*Id.* at 59.)

Plaintiff testified that Hassell assigned tasks to her which interfered with her sales duties and that he changed work orders causing further problems for her. (Charney Dep. at 45-71.) Plaintiff contends that Hassell hid vehicle keys from her to prevent her from allowing customers to test drive vehicles. (*Id.* at 47-49.) She testified that if she could not find certain keys, the keys were not available to other salespersons either, and thus she did not know whether this conduct was directed solely toward her. (*Id.*)

Plaintiff testified that she witnessed male employees massaging the shoulders of another female employee. (*Id.* at 83-84.) She testified specifically to three occasions where the employee objected to the touching. (*Id.* at 83.) She also testified that Hassell commented that the employee was probably good in bed, and stated that she had a firm body. (*Id.* at 81.) Gary Manley told the employee that she was attractive and asked if she worked out. (*Id* at 82-83).

Plaintiff testified that Rick Rabon told inappropriate jokes. (Charney Dep. at 91.) Plaintiff did not relate any details of the jokes other than that the jokes were "directed at northerners, yankees" and that there were also sexual jokes. (*Id.* at 93.) Plaintiff further alleges that Rabon inquired as to whether she was having an affair with another employee, Larry Britton. (*Id.* at 149.)

Plaintiff contends that Larry Britton made derogatory comments to her such as "never send a women out to do a man's job" and told her she was "nothing but a glorified secretary." (Charney Dep. at 137, 140.) She also contends that Britton, Horace Brown, and another

4

employee placed a pill bottle on top of a table, stated it was Viagra, and started "moving the desk up and down as if the Viagra was working." (*Id.* at 141.)

### 2. Affidavits Submitted by Plaintiff

In opposition to Defendants' Motion for Summary Judgment, plaintiff submitted her affidavit and the affidavits of Bonnie Cosper, Ray Fowler and Linda Braswell. In her affidavit, Charney states that she was subjected to "lewd, vulgar, sexually explicit jokes on a daily basis," that she witnessed touching of female employees, that Michael Eckenrod was aware of such conduct and participated in it, and that the environment was such that "one would either tolerate the behavior or lose [her] job." (Charney Aff., Exh. A to Defs' Mot. to Strike).

Bonnie Cosper states that she was subjected to similar conduct, but she does not indicate whether any of the conduct was directed toward or witnessed by Charney. (Cosper Aff., Exh. B to Defs' Mot. to Strike). Ray Fowler states that Hassell, Rayborn, and Britton made lewd and vulgar remarks to female employees, that he witnessed Hassell "physically touching female employees," including Charney, Cosper, and Fortenberry, that Hassell "continuously" told "inappropriate sexual jokes" and "made sexual remarks and innuendos," and that Michael Eckenrod was aware of the conduct. (Fowler Aff., Exh. C to Defs' Mot. to Strike). Fowler testified that he saw, "on several occasions, Alan Hassell rub against and put his hands on Teresa Charney." (*Id.*) Linda Braswell states in her affidavit that Rabon and Hassell massaged the shoulders of two employees, that she heard "vulgar, sexually related jokes," such as "I would like her to sit on my face," from Manley and other male employees, and witnessed sexual touching. (Braswell Aff., Exh. D to Defs' Mot. to Strike). Braswell further states that if the

females "did not play along," they were terminated. (*Id.*) Braswell does not testify concerning any conduct directed toward Charney. (*Id.*)

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986.) The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; see Fed.R.Civ.P. 56(a) and (b).  Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324.  Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

In deciding a motion for summary judgment, the role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury. *Id.*  Therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255.  The

6

nonmovant need not be given the benefit of every inference but only of every *reasonable*

inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

Defendants contend that plaintiff has not presented sufficient evidence on her Title VII

and Section 1981 claims that she was discriminated on the basis of her gender with regard to

promotions or terms and conditions of her employment and that she was subject to a sexually

hostile work environment. Defendants also move for judgment as a matter of law on plaintiff's

Equal Pay Act claim. Defendants also move to strike the affidavits of Theresa Charney, Bonnie

Cosper, Ray Fowler and Linda Braswell submitted by plaintiff in opposition to Defendants'

Motion for Summary Judgment.

### A.    Defendants' Motion to Strike Plaintiff's Affidavits

Defendants contend that the affidavits of Charney, Cosper, Fowler, and Braswell should

not be considered because they are insufficient under Rule 56(e). According to defendants, the

affidavits contain generalized and conclusory statements, hearsay, and statements that contradict

prior testimony.

Affidavits filed in support of or in opposition to a motion for summary judgment "shall

be made on personal knowledge, shall set forth such facts as would be admissible in evidence,

and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

FED. R. CIV. P. 56(e). Supporting and opposing affidavits must be based on personal knowledge.

*Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (citing Rule 56(e)). "Rule 56(e)'s

personal knowledge requirement prevents statements in affidavits that are based, in part 'upon

information and belief'–instead of only knowledge–from raising genuine issues of fact sufficient

to defeat summary judgment." *Id.* (citations omitted). "Likewise, an affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact." *Id.* (citations omitted). Affidavits containing conclusory allegations without specific supporting facts have no probative value and are insufficient to preclude summary judgment. *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Furthermore, a party cannot give "clear answers to unambiguous questions" in a deposition and then raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction. *Rollins v. TechSOUTH, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987) (citing *Van T. Junkins & Assocs. v. U.S. Indus., Inc.*, 736 F.2d. 656, 657 (11th Cir. 1984)). Finally, inadmissible evidence in affidavits, such as hearsay, may be considered by a court only if the evidence is capable of being reduced to admissible evidence for trial. *McMillian v. Johnson*, 88 F.3d. 1573, 1584 (11th Cir. 1996).

In ruling on defendants' Motion for Summary Judgment with regard to plaintiff's claim of a hostile environment based on her gender, the court must determine whether a reasonable jury could find the conduct alleged by Charney sufficiently severe and pervasive to alter the conditions of her employment with Eckenrod Ford. *See Gupta v. Fla. Bd. of Regions*, 212 F.3d 571, 583 (11th Cir. 2000). The affidavits submitted in support of plaintiff's claim lack descriptions of any specific instances of the alleged harassing conduct. Because specific supporting facts are absent, the court finds that the affidavits are largely conclusory in nature and have little or no probative value to plaintiff's claims. The court will address each affidavit in turn.

8

1.     **Affidavit of Theresa Charney**

In her affidavit, Charney alleges that she was subjected to "lewd, vulgar, sexually explicit jokes, on a daily basis," that she was touched inappropriately, that she witnessed touching of other female employees, and that Eckenrod was aware of the hostile environment at the dealership. (Charney Aff.) Although plaintiff's affidavit lacks sufficient detail that would allow the court to determine the lewdness, vulgarity, or sexual explicitness of the conduct alleged, the court refuses to strike the affidavit in its entirety. However, the third sentence of the second paragraph, the second clause of the sixth sentence of the second paragraph, and the last sentence of the affidavit are due to be stricken for the reasons set forth below.

In the third sentence of plaintiff's affidavit she states that Hassell inappropriately touched her "on more than one occasion." (Charney Aff.) In her deposition, plaintiff testified that Hassell tried to put his hands on her shoulders, and she told him not to. (Charney Dep. at 27-28.) When plaintiff was asked "Did he ever touch you in any other way after that one incident?" she responded, "[n]o." (*Id.* at 28.) Because the affidavit contradicts plaintiff's clear answer to an unambiguous question in her deposition, the court finds that the third sentence of the second paragraph the plaintiff's affidavit is due to be stricken.

In the second clause of the sixth sentence of the second paragraph, plaintiff states that Eckenrod "participated in that hostile environment on ocassions [sic] wherein he massaged and touched female employees, including Penny Fortenberry." (Charney Aff.) In her deposition, plaintiff was specifically asked whether Eckenrod had done anything "that was offensive." (Charney Dep. at 88-89). At that time, plaintiff said nothing about improper touching or massaging female employees by Eckenrod but referred to his comments that "[she] made a

9

mountain out of a mole hill" and that [he] spend[s] more time with [Charney] than any single

employee [at the dealership]." (*Id.*) Because the affidavit statement contradicts plaintiff's

deposition testimony without explanation of the contradiction, the second clause of the sixth

sentence is due to be stricken.

In the last sentence of plaintiff's affidavit, she states that "the environment of

Eckenrod/Long Lewis Ford was such that one would either tolerate the behavior or lose [her]

job." (Charney Aff.)  The court finds the statement conclusory, unsupported by the plaintiff's

prior deposition testimony, and incapable of being reduced to admissible form at trial, and,

therefore, due to be stricken.

### 2. Affidavits of Bonnie Cosper and Ray Fowler

Although the affidavits of Cosper, Fowler, and Braswell are for the most part conclusory

and lack sufficient detail to assist the court in determining the severity and pervasiveness of the

conduct alleged by plaintiff, the court declines to strike the affidavits.

### 3. Affidavit of Linda Braswell

Although the affidavit of Braswell lacks sufficient detail to assist the court in determining

the severity and pervasiveness of the conduct alleged by plaintiff, the court declines to strike the

affidavit in its entirety.  In the third paragraph of her affidavit, Braswell states:

> Based upon my observations of the daily sexual jokes, innuendos, vulgar actions,
> and sexual touching by male employees, if female employees did not play along
> with the male employees, then those male employees, including supervisors,
> would make it a point to have that female employee terminated.  I did not play
> along, and I was terminated.  Bonnie Cosper did not play along, and Bonnie
> Cosper was terminated.  Teresa Charney did not play along, and Teresa Charney
> was terminated.

(Braswell Aff.)  The court finds these statements conclusory, unsupported by factual evidence, and incapable of being reduced to admissible form at trial.  Therefore, the statements are due to be stricken.

**B.    Plaintiff's Sexual Harassment Claim.**

Plaintiff alleges a hostile work environment in Count III of her original and amended complaints.  Plaintiff, however, does not allege that she was subject to *quid pro quo* sexual harassment, and she does not argue it in her brief in opposition to the Defendants' Motions for Summary Judgment.   Therefore, the only claim for sexual harassment before the court is hostile work environment sexual harassment.

To support a hostile work environment sexual harassment claim, the plaintiff must establish:

> (1) that [she] belongs to a protected group; (2) that [she] has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe and pervasive to alter the terms and conditions of employment and create a discriminatorily abusive environment; and (5) a basis for holding the employee liable.

*Gupta*, 212 F.3d at 582 (11th Cir. 2000) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d. 1238, 1245 (11th Cir. 1999).  The fourth element "is the element that tests the mettle of most sexual harassment claims" and "[r]equiring the plaintiff to prove that the harassment is severe or pervasive ensures that Title VII does not become a mere 'general civility code.'" *Gupta*, 212 F.3d at 583 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  The requirement that the alleged harassment be severe and pervasive is "crucial in order to ensure that courts and juries do not mistake ordinary socializing in the workplace -- such as . . .

11

intersexual flirtation -- for discriminatory 'conditions of employment.'" 212 F.3d. at 583. Here plaintiff's prima facie case fails because she failed to establish the fourth element of the claim.

To establish actionable hostile work environment sexual harassment, the plaintiff must prove that she subjectively perceived the environment as hostile and abusive and that a reasonable person would perceive the environment to be hostile and abusive. *Mendoza*, 195 F.3d. at 1246. When determining whether the conduct is objectively severe or pervasive the four factors to consider include (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* at 1246 (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

The court is of the opinion that the conduct complained of by plaintiff in this case does not rise to the level necessary to establish an actionable hostile work environment claim. In *Mendoza*, the plaintiff testified that the alleged harasser constantly watched her, followed her, looked her up and down in an obvious fashion, looked at her groin area and made a sniffing motion, rubbed his right hip against her left hip while touching her shoulder and smiling, and once, when she attempted to inform him that she was there only to work, responded, "Yea, I'm getting fired up too." *Mendoza*, 195 F.3d. at 1242-44. There was also testimony in *Mendoza* that employees related their "sexual plans" with their spouse to other employees. *Id.* The trial court found that the incidents, in the mind of a "reasonable person," were "largely devoid of any physical contact or overly offensive comments," "not physically threatening or humiliating," and not of "sufficient frequency and severity to suggest a hostile or abusive environment." *Id.* at

12

1244. The Eleventh Circuit affirmed the trial court's grant of summary judgment, reasoning that if it issued a ruling holding that the conduct alleged by *Mendoza* was sufficiently severe or pervasive to alter the terms and conditions of employment, such a base line for actionable conduct would be "far below" the base line established by other circuits. *Id.* at 1251.

Similarly, in *Gupta*, the plaintiff testified that the alleged harasser looked her up and down, offered to take her to lunch at Hooter's Restaurant, began calling her at home at night, asked her if she was in bed during the phone calls, stared at her legs, put his hand on her right thigh (partly on the inside of her thigh), lifted the hem of her dress about four inches, unbuckled his belt, pulled down his zipper, and began tucking in his dress shirt in front of her, and indicated he wanted to spend the night with her. *Gupta*, 212 F.3d at 578-80. The Eleventh Circuit reversed and remanded the jury verdict in favor of the plaintiff, stating:

> The Fifth Circuit recently opined, "[a]ll of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment."

212 F.3d at 586 (citing *Indest v. Freeman Decorating Co., Inc.*, 164 F.3d. 258, 264 (5th Cir. 1999)). The Eleventh Circuit then stated that Ms. Gupta's claim did not constitute such a case. *Id.* at 586.

In this case, the conduct alleged by Charney is not "sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." *Gupta*, 212 F.3d 583. Charney's allegations of harassment include a number of jokes and vulgar remarks about which she cannot recall any details, a touch on the shoulders that was not repeated after she complained, and a crude joke about Viagra. The conduct complained of by the plaintiff was not

13

sufficiently frequent, severe, physically threatening or humiliating to create an actionable claim for hostile environment, and no reasonable jury could find that the conduct unreasonably interfered with plaintiff's employment. *See Mendoza,* 195 F.3d at 1247. Rather, the conduct relates to workplace disagreements and boorish conduct between the plaintiff and others. *See Gupta,* 212 F.3d at 583. Accordingly, Defendants' Motion for Summary Judgment as to plaintiff's sexual harassment claim is due to be granted.

## C.    Plaintiff's Discrimination Claims

Title VII prohibits an employer from "discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." *Schoenfeld v. Babbitt,* 168 F.3d. 1257, 1266 (11th Cir. 1999) (quoting 42 U.S.C. §2000e-2(a)(1)). A plaintiff in a Title VII case may establish discrimination by offering either direct or circumstantial evidence. *Id.* In this case there is no direct evidence of discrimination. Therefore, the court's analysis is governed by the tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981). *See Standard,* 161 F.3d at 1330; *Turnes,* 36 F.3d at 1060. Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine,* 450 U.S. at 252-53. If plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas,* 411 U.S. at 802. If defendant succeeds in carrying this burden, then  plaintiff must prove that the defendant's articulated reasons are a mere pretext for unlawful motives. *Burdine,* 450 U.S. at 253. At all times, plaintiff bears the burden of

14

persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to judgment as a matter of law on the plaintiff's claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

### 1.    Plaintiff's Termination Claim.

Charney claims that defendants terminated her employment on the basis of her gender. (Compl. at ¶ 34.) To establish a prima facie case of discrimination under Title VII, a plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside of the protected class. *Hinson v. Clinch County Bd. Of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000). Because plaintiff has presented no evidence that she was replaced by a person outside the protected class, her prima facie case fails.

Assuming, however, that plaintiff has established a  prima facie of gender discrimination, she has not rebutted defendants' proffered reason for terminating her.  Eckenrod testified that the reason he terminated plaintiff was her lack of production. (Eckenrod Dep. at 113-14, 117-19, Exh. 7 to Defs' Evidentiary Submission; Payroll Change Notice, Exh. 9 to Defs' Evidentiary Submission.)  On April 29, 1999, more than four months prior to the plaintiff's termination, the plaintiff received a written warning indicating that she had delivered only four vehicles during the month of April and that "[was] not where [she] need[ed] or want[ed] to be."  (Exh. 8 to Defs' Evidentiary Submission.)  Eckenrod further testified that Charney failed to follow directions

15

from her supervisors. (Eckenrod Dep. at 114.)  In addition, prior to terminating the plaintiff, Eckenrod agreed to supervise her personally.  (Eckenrod Dep. at 148.)

The plaintiff contends that defendants' proffered reasons were pretextual and offers her own testimony and the affidavits, Cosper, Fowler and Braswell to support her contention that the environment of Eckenrod Ford was sexually charged and that if one did not tolerate the hostile behavior, sexual comments, and inappropriate touching, then one would be terminated. (*See* Charney Aff., Cosper Aff., Fowler Aff., Braswell Aff.)  Plaintiff has the burden of proving that defendants' proffered reason was pretext by persuading the court directly that a discriminatory reason more than likely motivated the employer or indirectly by showing that the reason given by the employer was not the real reason. *Chapman v. A I Transport*, 229 F.3d. 1012, 1024 (11th Cir. 2000).  To avoid summary judgment, the plaintiff must present significant probative evidence on this issue. *Id.* at 1376.  "[F]ederal courts do not sit to second-guess the business judgments of employers." *Combs v. Plantation Patterns*, 106 F.3d. 1519, 1543 (11th Cir. 1993). A plaintiff does not establish pretext simply by questioning the wisdom of the employer's reasoning. *Combs*, 106 F.3d 1543. Title VII "does not mandate that employers make smart or even fair choices in their personnel decisions." *Pennington v. City of Huntsville, Ala.*, 93 F.Supp.2d. 1201, 1217 (N.D. Ala. 2000).

Here plaintiff has not presented sufficient evidence to establish that Eckenrod Ford's stated reason for her termination was a pretext for discrimination.  The evidence presented by the

plaintiff in support of her claim amounts to conclusory statements.[5]   Accordingly, defendants'
motion for summary judgment as to discrimination in termination will be granted.

### 2.      Plaintiff's Promotion Claim.

Plaintiff also claims that Eckenrod Ford failed to promote her to the position of
Commercial Sales Manager because of her gender.  When the plaintiff first transferred from
retail sales to commercial sales, Ray Fowler was her supervisor. (Charney Dep. at 18.)  At that
time, she had been employed in the car business for a total of approximately three months.
(Charney Dep. at 20-21.)  After Fowler was terminated, (Charney Dep. at 21),  Charney
requested that she be allowed to "run the department alone" until it was "off the ground," (*Id.* at
36).  At that time, Charney had automobile and truck sales experience of approximately one
year.  (*Id.* at 37.) According to Charney, she did not care about having the title of manager.  (*Id.*)
Allen Hassell, rather than Charney, was ultimately promoted to Manager of the Commercial
Sales Division.  (Eckenrod Dep. at 114.)  At the time Hassell was promoted to Commercial Sales
Manager, he had twelve years of experience in the automobile business and had worked with the
dealership for seven or eight years as a successful sales consultant.  (Eckenrod Dep. at 114;
Eckenrod Aff. at ¶ 5, Exh. 12 to Defs' Evidentiary Submission.)  Eckenrod asserts that the
decision not to promote Charney was because of her lack of sales experience  and her lack of
production in the months preceding the management opening.   (Eckenrod Aff. at ¶ 8.)

Plaintiff contends that she had the most experience in the commercial sales division.
(Charney Dep. at 37.)  In addition, Fowler testified by affidavit that Charney was "at a minimum,

---

[5]Defendants presented evidence that Eckenrod offered the plaintiff a job in the Service
Department in an effort to retain the plaintiff as an employee at the time she was terminated;
plaintiff declined the offer.  (Eckenrod Dep. at 165.)

as qualified to manage the commercial sales division as any employee of Eckenrod/Long Lewis Ford, including Allen Hassell." (Fowler Aff.) However, assuming plaintiff has met her prima facie case, she has presented no evidence that the defendants' articulated reason for failing to promote her is pretextual.

In a failure to promote case, the plaintiff cannot establish a pretext by simply showing that she was better qualified than the individual who received the promotion. *Lee v. GTE Fla., Inc.*, 226 F.3d. 1249, 1253 (11th Cir. 2000). Even if plaintiff were more qualified than Hassell, to demonstrate pretext, plaintiff must show not only that the defendants' employment decision was mistaken, but also that it was motivated by sex. *Id.* (citing *Alexander v. Fulton County,* 207 F.3d. 1303, 1339 (11th Cir. 2000)). A plaintiff does not establish that a defendant's proffered reason is pretext merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer. *Id.* (citations omitted). In fact, "'disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face.'" *Lee*, 226 F.3d. at 1254 (citing *Deines v. Texas Dept. of Protective and Regulatory Servs.*, 164 F.3d. 277, 280 (5th Cir. 1999)).

The evidence before the court establishes that Hassell had several years experience at Eckenrod Ford and twelve years experience in the automobile industry. When the managerial position for the Commercial Sales Division became open, plaintiff had approximately one year of experience in the automobile industry. Eckenrod testified that he promoted Hassell because Hassell had more experience. Such a decision is one that might motivate a reasonable employer, and there is no evidence of disparity in qualifications sufficient to demonstrate discriminatory

intent.  Because plaintiff has not presented sufficient evidence to create a genuine issue of

material fact that defendants' legitimate, non-discriminatory reason for not promoting Charney is

pretext for unlawful discrimination based on plaintiff's gender, summary judgment is due to be

granted.

### 3.    Plaintiff's Wage Claim

Plaintiff contends that defendants discriminated against her by paying her less than male

employees with the same or similar responsibilities.  (Compl. at ¶ 31.)  To establish a prima facie

case of sex discrimination in compensation, plaintiff must prove that (1) she is a member of a

protected group; (2) she asked for and was qualified for the employment condition or benefit; (3)

despite her qualifications she was denied the condition or benefit; and (4) at the time she was

denied the condition or benefit, other similarly situated employees were given the benefit.

*Thompson v. Morris Brown College*, 752 F.2d 558, 562 (11th Cir. 1985) (citing *McDonnell*

*Douglas*, 411 U.S. at 802-03).  Plaintiff must show:

> that she occupies a job similar to that of higher paid males.  Once a *prima facie*
> case is established, the defendant must articulate a legitimate, non-discriminatory
> reason for the pay disparity. This burden is exceedingly light; the defendant must
> merely proffer non-gender based reasons, not prove them.  Once such a
> justification is advanced, the plaintiff must demonstrate by a preponderance of the
> evidence that the employer had a discriminatory intent.  In other words, the
> plaintiff must show that a discriminatory reason more likely than not motivated
> [the employer] to pay her less.

*Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (internal citations and

quotations omitted) (emphasis in original).  To prove discriminatory intent, plaintiff cannot

simply recast an employer's proffered non-discriminatory reason or substitute his business

judgment for that of the employer.  *Chapman*, 229 F.3d. at 1030.  Rather, if the reason is one that

might motivate a reasonable employer, plaintiff must "meet that reason head on and rebut it." *Id.*

Plaintiff cannot succeed by simply quarreling with the wisdom of defendants' reason. *Id.*

Plaintiff testified that she was discriminated on the basis of her pay when she worked in the Commercial Sales Division. During plaintiff's deposition, the following exchange occurred:

Q:    What do you base that [wage discrimination] claim on?

A:    That salary, which was more than fair for what I received at that position, was negotiated by Ray Fowler, who was very knowledgeable in the Commercial Sales industry. And I don't know what the other men - - but L. C. Glover told me he wanted more of a base salary, but Allen said I can't do that while Terry is here.

Q:    Do you know if he ended up getting more than you after you left?

A:    He actually left before I did.

Q:    So do you know if any other male employees - - any other male account managers in commercial sales made more than you?

A:    I don't know. Not while I was in there.

*Id.* at 216-217. She further testified that she thought her "figures were manipulated," but that she did not know exactly how. *Id.* The only evidence submitted by the plaintiff in support of her wage discrimination claim is that she "suspect[ed]" that she was paid less than other male employees. (Charney Dep. at 213.) Plaintiff did not identify a male employee who was paid more than her. (*Id.*)

Eckenrod testified that Charney was hired as a retail sales consultant earning $250.00 per week draw against commission, the same pay scale afforded to all other retail sales consultants, both male and female. (Eckenrod Aff. at ¶ 3.) When the plaintiff was transferred to the Commercial Sales division, she received a salary of $500.00 per week, plus twelve percent

commission from finance and insurance sales, plus five percent of the net gross of the vehicles which she sold, plus a vehicle allowance of $300.00 per month. (*Id.* at ¶ 4.) Eckenrod testified that this salary was negotiated between Fowler and Charney. (Eckenrod Dep. at 110.) He testified that the reason Charney was placed on a higher salary with less commission was because of her lack of experience in commercial sales. (*Id.*) In February of 1999, Charney was transferred back to the Retail Sales Department, where she received a $550.00 per week draw against commission. (Eckenrod Aff. at ¶ 7.) At that time, the weekly draw for retail sales consultants had been increased to $300.00 per week draw against commissions. (*Id.*) In April of 1999, Charney was placed on the same draw against commissions as all other retail sales consultants.[6] (*Id.*)

Because plaintiff has not presented sufficient evidence that a similarly situated male employee was paid more than her, her prima facie case fails. Even if plaintiff were similarly situated to an identifiable male employee, she has not rebutted defendants' legitimate, non-discriminatory reason for a disparity in pay. Defendants state that plaintiff received a higher base salary and different commission structure due to her level of experience. Plaintiff presents no evidence sufficient to create a jury question that defendants' proffered reason is pretext for unlawful sex discrimination. The wisdom of defendants' business decision is not a matter for the court to question, and, therefore, defendants' Motion for Summary Judgment as to the wage discrimination claim is due to be granted.

_____

[6] According to Eckenrod, Charney was excused of arrears from her draw, $1,517.88, at that time. (Eckenrod Aff. at ¶ 7.)

**D.      Plaintiff's Equal Pay Act Claim**

Plaintiff contends that defendants violated the Equal Pay Act because they paid plaintiff less than they paid male employees although plaintiff was equally or better qualified than her male counterparts.  To establish a prima facie case under the Equal Pay Act,[7] an employee must show that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)).  Under the Equal Pay Act, there is a high standard for determining whether jobs are equal with respect to skill, effort and responsibility.  *Waters*, 874 F.2d at 799. "[A]lthough employees do not have to prove jobs are identical, they have the heavy burden of proving 'substantial identity of job functions.'" *Id.* (citing *Hodgson v. Golden Isles Convalescent Homes, Inc.*, 468 F.2d 1256, 1258 (5th Cir. 1972)).  Plaintiff cannot establish a prima facie case without showing that the jobs are "substantially identical or equal." *Waters*, 874 F.2d at 799 (citation omitted).   Plaintiff establishes a prima facie case by comparing the skills and qualifications actually needed to perform the jobs rather than the skills and qualifications of

_____

[7] The Equal Pay Act provides in relevant part that

> [n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .

29 U.S.C. § 206(d)(1).

22

individual employees actually holding those jobs. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1533 (11th Cir. 1992).  The focus is on the primary duties of each job.  *Id.* Duties that are incidental, insubstantial, or typically performed by other personnel at lower pay are not germane to the inquiry.  *Id.* (citation omitted).

When the plaintiff initially began employment with Eckenrod Ford, she was on the same pay structure as other employees in retail sales.  (Eckenrod Aff. at ¶ 3.)  When the plaintiff was moved to commercial sales, she was on a different pay structure, receiving a base salary of $500.00 per week, plus 12½ % F&I commission, plus five percent of the net gross of vehicles which she sold and a vehicle allowance of $300.00 per month.  (*Id.* at ¶ 4).  At that particular time, the only two employees in the Commercial Sales Division were Fowler and Charney.  (Eckenrod Dep. at 108).  Fowler was the manager of the department and plaintiff's supervisor.  (*Id.* at 107.)  Eckenrod testified that Fowler and plaintiff agreed upon her pay scale, which included a higher salary and a smaller commission due to her lack of experience.  (*Id.* at 110.)

The Equal Pay Act requires that a plaintiff "meet the fairly strict standard of proving that she performed substantially similar work for less pay."  *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1526 (11th Cir. 1992).  Here, plaintiff has failed to establish a prima facie case.  There is no evidence before the court that the plaintiff was paid differently than any other employee of the Commercial Sales Division for substantially similar work.  Plaintiff's suspicion that she was paid less for substantially similar work is not sufficient to establish a prima facie case.

Even if Charney were able to establish a prima facie case under the Equal Pay Act, Eckenrod Ford contends that it has established the affirmative defense that the pay differential

23

was based on a factor other than sex. Factors other than sex include "unique characteristics of the same job; . . . an individual's experience, training or ability; or . . . special exigent circumstances connected with the business." *Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995). If plaintiff establishes a prima facie case, then "[t]he burden shifts to defendant to prove by a preponderance of the evidence that the differential in pay is justified by one of the four exceptions . . . ." *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir. 1994) (citation omitted). The exceptions are "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). Defendant must show that "the factor of sex provided *no basis* for the wage differential." *Id*. at 590. Factors such as experience and education of employees may constitute defenses to liability. *See Miranda*, 975 F.2d at 1533 n.18 (citation omitted).

Eckenrod Ford has presented evidence that plaintiff's salary structure was in place because of her inexperience. A higher-salary, lower-commission scheme was utilized in an effort to accommodate plaintiff, rather than penalize her because of her limited experience in commercial sales. Plaintiff had never worked in commercial sales before she was hired by Eckenrod Ford. Plaintiff has failed to create a genuine issue of material fact as to defendants' affirmative defense. Defendants' Motion for Summary Judgment as to the plaintiff's Equal Pay Act claim is due to be granted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment as to all plaintiff's claims will be granted. Defendants' Motion to Strike Affidavits Submitted in

Opposition to Motions for Summary Judgment will be granted in part and denied in part. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this ___31st___ day of March, 2003.

Sharon Lovelace Blackburn
_____
**Sharon Lovelace Blackburn**
United States District Judge